UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| KRISTOPHER T. SAUNDERS, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | 1:13-cv-00244-JAW |
| | ) | |
| THE GETCHELL AGENCY, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER ON MOTION TO DISMISS**

In this Fair Labor Standards Act and Maine wage and hour case, the Defendants move to dismiss all claims brought by Kristopher Saunders, one of the Plaintiffs, and to dismiss the Maine wage and hour law claim brought individually against Rena Getchell. Because Mr. Saunders has filed for bankruptcy and has listed his claims as an asset in the bankruptcy estate, the Court grants the motion because it lacks subject matter jurisdiction over Mr. Saunders' claims. The Court also grants the Defendants' motion to dismiss the state law claim against Rena Getchell because on this record, Ms. Getchell cannot be held personally liable for the state of Maine wage and hour violations that the remaining Plaintiffs have asserted.

**I.   STATEMENT OF FACTS**

  **A.   Procedural History**

On July 7, 2013, Kristopher Saunders and Cory Scribner filed "an individual, collective, and class action" for unpaid wages pursuant to the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq*. and the state of Maine's wage and hour law, 26

ME. REV. STAT. § 661 *et seq*. The Plaintiffs twice amended their Complaint without objection by the Defendants. *Mot. for Leave to File Second Am. Compl. and to Add Additional Parties Pl. with Incorporated Mem. of Law* (ECF No. 23); *Resp. of Defs. to Second Mot. to Am. Compl.* (ECF No. 29); *Order* (ECF No. 31); *Second Am. Collective and Class Action Compl.* (Sept. 16, 2013) (ECF No. 32) (*Second Am. Compl.*). The latest Complaint includes four additional plaintiffs: Jared Forrest, Taylor Perkins, Karey Ann Sinclair, and Katelin Varney, *Second Am. Compl.* ¶¶ 6-17, and is brought on the named plaintiffs' own behalf and on behalf of two overlapping putative classes of individuals, against The Getchell Agency, Inc. (Getchell) and Rena Getchell. *Id.* at 1. The members of both putative classes were employed by the Defendants and "performed tasks of caretakers of disabled individuals in homes operated by the [D]efendants." *Id.*

On July 29, 2013, the Defendants filed a motion to dismiss all claims of Plaintiff Kristopher Saunders and to dismiss the state law claim against Defendant Rena Getchell. *Mot. to Dismiss of Defs.* (ECF No. 6). They also filed, on the same date, a partial answer to the Complaint, denying its essential allegations and asserting a series of affirmative defenses. *Partial Defenses and Answer of Defs.* (ECF No. 8) (*Ans.*). On September 30, 2013, in response to the filing of the Second Amended Complaint, the Defendants filed an updated motion to dismiss and an updated answer. *Renewed and Supplemental Mot. to Dismiss of Defs.* (ECF No. 37) (*Def.'s Mot.*); *Partial Defenses and Ans. of Defs. to Second Am. Compl.* (ECF No. 38) (*Ans.*). The Plaintiffs responded on October 9, 2013. *Opp'n of Pls. to Defs.' Renewed*

2

*and Supplemental Mot. to Dismiss* (ECF No. 39) (*Pls.' Opp'n*). The Defendants replied on October 23, 2013. *Reply of Defs. in Support of Renewed and Supplemental Mot. to Dismiss* (ECF No. 45) (*Defs.' Reply*).

### B. The Parties' Positions

#### 1. The Plaintiffs' Definition of the Putative Classes

The Second Amended Complaint defines two overlapping proposed group classifications, each consisting of the named plaintiffs along with a group of Getchell employees. The first—the collective action class—is defined pursuant to the Fair Labor Standards Act, 29 U.S.C. § 216(b). *Second Am. Compl.* ¶ 33. The Plaintiffs define the FLSA class as: "House Managers who were paid on an hourly basis sometime during three years prior to the Complaint and who were required to be with consumers Twenty-four (24) hours per day." *Id.*

The second class—the class action class—is defined pursuant to Rule 23 of the Federal Rules of Civil Procedure, *id.* ¶ 44, and alleges violations of Maine state minimum wage and overtime law, 26 ME. REV. STAT. § 664(3). *Id.* ¶¶ 44, 62-65. The Plaintiffs define the Rule 23 class as:

> All persons who were, are, or will be employed by Defendant as House Managers in the State of Maine and who were paid on an hourly basis during the six years prior to the filing of the complaint in this case, and who were required to be with the consumers for 24 hours per day.

*Id.* ¶ 44.

#### 2. The Defendants' Motion

The Defendants move to dismiss two components of the Second Amended Complaint. First, the Defendants seek to dismiss the claims of Plaintiff Kristopher

3

Saunders, asserting that Mr. Saunders lacks standing to pursue his FLSA and Maine wage and hour law claims. *Def.'s Mot.* at 1-3. Specifically, the Defendants note that Mr. Saunders filed a petition for bankruptcy on June 11, 2012, which is still pending in the United States Bankruptcy Court for the District of Maine. *Id.* at 1-2. An asset in Mr. Saunders' bankruptcy estate is described as "[p]art of a possible class action lawsuit against Getchell Brothers [sic] with other former employees for unpaid wages"; the Defendants claim that Mr. Saunders has no standing to pursue the claims in this case because his claims are the property of the bankruptcy estate. *Id.* at 2. As a result, the Defendants move to dismiss Mr. Saunders' claims pursuant to either Federal Rule of Civil Procedure 12(b)(1) on the ground that the Court lacks subject matter jurisdiction over his claims, or alternatively pursuant to Rule 12(b)(6) on the ground that Mr. Saunders fails to state a claim against the Defendants due to his lack of standing. *Id.* at 2-3.

Second, the Defendants argue that the Second Amended Complaint fails to state a claim under the state of Maine's wage and hour law against Rena Getchell. *Id.* at 3-5. The Second Amended Complaint seeks damages against Rena Getchell individually, alleging that she "is now, and at all times relevant to this Complaint was an owner, the President, and the Treasurer, of the aforesaid The Getchell Agency, Inc., and actively managed, supervised, and directed the business affairs and operations of said corporation and had operational control over significant aspects of the corporation's day-to-day functions including compensation of employees." *Second Am. Compl.* ¶ 5. The Defendants seek to dismiss the state law

4

claim in the Second Amended Complaint as against Ms. Getchell as an individual on the ground that Maine's wage and hour law does not impose liability on individual shareholders and officers of a corporation for wage-related claims, a conclusion that they maintain was recently reached by this District in *Affo v. Granite Bay Care, Inc.*, 2:11-cv-482-DBH, 2013 U.S. Dist. LEXIS 76019, at *26-29 (D. Me. May 30, 2013). *Id.* at 3. With no provision for individual liability in the statute, the Defendants maintain there can be no personal liability absent allegations that a corporate officer "undertook any individual acts of wrongdoing apart from those of the [corporation]," or unless the standards to pierce the corporate veil are met. *Id.* at 4 (quoting *Lebanon v. E. Lebanon Auto Sales, LLC*, 2011 ME 78, 25 A.3d 950). As the Plaintiffs allege neither that Ms. Getchell "was an employer of [the] Plaintiffs apart from her alleged leadership role" at Getchell, *id.* at 3, nor that Getchell abused the corporate form, the Defendants contend the Second Amended Complaint fails to state a claim against Ms. Getchell under Maine law upon which relief can be granted.[1] *Id.* at 4.

### 3. The Plaintiffs' Opposition

---

[1] The Defendants had moved to dismiss the FLSA claims of Mr. Forrest, Ms. Perkins, and Ms. Varney, asserting that they lack standing to be plaintiffs because they had not filed written consent with this Court. *Defs.' Mot.* at 5. They stated that the FLSA provides that "[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought," *id.* (quoting 29 U.S.C. § 216(b)), and that "[f]ailure to file such consent is a basis for dismissal." *Id.* However, in their reply, the Defendants conceded that the Plaintiffs filed consents for Mr. Forrest, Ms. Perkins, and Ms. Varney, and the Defendants have withdrawn that portion of their motion to dismiss. *Defs.' Reply* at 6.

In response, the Plaintiffs oppose each of the Defendants' grounds for partial dismissal of the Second Amended Complaint. With respect to the claims brought by Mr. Saunders, the Plaintiffs state that "[t]he Court should deny the Motion because it is unclear whether as *of this date* the plaintiff lacks standing in this matter." *Pls.' Opp'n* at 1 (emphasis in original). The Plaintiffs implicitly acknowledge that Mr. Saunders' claims against the Defendants were at some point part of his bankruptcy petition, but state that the bankruptcy trustee "has no intention of prosecuting the claim on behalf of the bankruptcy estate." *Id.* at 2. Instead, they explain that Mr. Saunders intends to "make a higher offer to the Trustee [to purchase the claim] than that of" an insurance company that has allegedly made an offer to purchase the claim. *Id.* The Plaintiffs argue "[i]t will accomplish little to dismiss Mr. Saunders' complaint and require him to re-file after the standing issue is resolved," and request that the Court deny this portion of the motion without prejudice, delay its ruling for 30 days, or permit the dispute to be resolved between the parties and trustee. *Id.*

Next, the Plaintiffs insist that the Second Amended Complaint alleges a proper state law claim against Ms. Getchell, the key consideration being that she "*participated directly in the alleged wrongdoing described in the Complaint.*" *Id.* at 3 (emphasis in original). They assert that, under Maine law: "*Shareholders* may only be held personally liable on a theory of piercing the corporate veil. In contrast, *officers, directors* and other participants in a corporation who are not shareholders . . . are liable if they participate in wrongful acts." *Id.* (emphasis in original). Thus,

6

the Plaintiffs maintain that an owner and officer such as Ms. Getchell who "actively managed, supervised and directed the business affairs and operation of the corporation" may be liable under Maine law for the nonpayment of wages. *Id.* at 2-3. For example, they contend that Ms. Getchell would be liable if she participated in the failure to pay employees for the nighttime hours worked. *Id.* (citing *Blue Star Corp. v. CKF Properties, LLC*, 2009 ME 101, ¶ 44, 980 A.2d 1270, 1280). The Plaintiffs dispute the Defendants' interpretation of *Affo*, stating that "it did not deal with the body of state law that makes *officers and owners liable*, as opposed to shareholders, for acts in which they directly participate." *Id.* at 4 (emphasis in original).

The Plaintiffs also reject the Defendants' reliance on *Lebanon*. *Id.* at 4-5. They note that while the *Lebanon* Court dealt with express statutory language providing that an owner of a limited liability company is not individually liable for the company's debts or liabilities, no such express language exists here. *Id.* at 5. Further, the Plaintiffs argue that the Maine Law Court in *Lebanon* "did not reverse[] the rather clear holding of *Blue Star Corp.*" *Id.* at 5. Next, the Plaintiffs' reject the comparative argument that because Maine's severance pay statute, 26 ME. REV. STAT. § 625-B, defines employer as including some individuals, the lack of a similar definition in Maine's wage and hour law demonstrates that the Legislature meant to exclude owners of corporations engaged in wrongful activities. *Id.* They assert that such logic "is unpersuasive to anyone with any understanding of the legislative process." *Id.* In sum, the Plaintiffs contend that in *Blue Star*, the

7

Maine Supreme Judicial Court decided in their favor the question of Ms. Getchell's potential individual liability for unpaid overtime and they maintain that in *Affo*, this District did not resolve this issue to the contrary. Accordingly, they argue that the motion to dismiss Ms. Getchell as a defendant must be denied.

4. **The Defendants' Reply**

In reply, the Defendants first reassert that Mr. Saunders lacks standing to bring the present claims. *Defs.' Reply* at 1. They note that the Plaintiffs have admitted Mr. Saunders is the debtor in the bankruptcy petition described in their motion to dismiss, and that "[Mr. Saunders] does not indicate that the bankruptcy schedules he filed have been amended to disclose the present claim to creditors, or assert that the claim is exempt." *Id.* The Defendants insist that the "various alleged extra-judicial communications" with the bankruptcy trustee do not change the fact that Mr. Saunders lacks standing to pursue his claims. *Id.* at 2.

Next, the Defendants state that "[t]he Court should decline [the] Plaintiffs' invitation to create a new cause of action against individual business owners and officers under the Maine wage and hour law." *Id.* at 2. They argue that *Blue Star* only supports a finding of personal liability when allegations of "tortious or deceptive conduct" are raised, *id.* at 2-4 (citing *Blue Star*, 2009 ME 101, ¶ 44, 980 A.2d at 1280; *Advanced Const. Corp. v. Pilecki*, 2006 ME 84, ¶¶ 13-17, 901 A.2d 189, 195-96), or where the wrongful acts are separate and distinct from the acts of the corporation. *Id.* (citing *Lebanon*, 2011 ME 78, ¶ 9 n.3, 25 A.3d at 953 n.3). The Defendants conclude that the Second Amended Complaint does not allege facts or

8

claims supporting these possible bases to impose liability and therefore fails to state a claim against Ms. Getchell upon which relief can be granted. *Id.* at 4-6.

## II. DISCUSSION

### A. Plaintiff Kristopher Saunders

#### 1. Legal Standard

Once raised, "the parties asserting jurisdiction, here the plaintiffs, have the burden of demonstrating the existence of federal jurisdiction." *Acosta-Ramirez v. Banco Popular de Puerto Rico*, 712 F.3d 14, 20 (1st Cir. 2013); *Elkins v. Elkins*, Civ. No. 09-582-P-H, 2010 U.S. Dist. LEXIS 57139, at *8-9 (D. Me. June 7, 2010) (recommended decision), *aff'd*, *Elkins v. Elkins*, 2010 U.S. Dist. LEXIS 63964, at *2 (D. Me. June 25, 2010). "Federal courts are obligated to resolve questions pertaining to subject-matter jurisdiction before addressing the merits of a case." *Acosta-Ramirez*, 712 F.3d at 18. On a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure, the plaintiff retains the burden of proof but "the district court must construe the complaint liberally, treating all well-pleaded facts as true and indulging all reasonable inferences in favor of the plaintiff." *Aversa v. United States*, 99 F.3d 1200, 1209-10 (1st Cir. 1996). The Court may consider extrinsic evidence introduced by either party in determining subject matter jurisdiction. *Elkins*, 2010 U.S. Dist. LEXIS 57139, at *9 (citing *Aversa*, 99 F.3d at 1210).

#### 2. The Pending Lawsuit and the Bankruptcy Estate

"When a debtor files a bankruptcy petition, all of his property becomes property of the bankruptcy estate." *Taylor v. Freeland & Kronz*, 503 U.S. 638, 642

(1992); *Elkins*, 2010 U.S. Dist. LEXIS 57139, at *10; 11 U.S.C. § 541(a)(1). "The bankruptcy trustee has exclusive standing to pursue causes of action that are property of the bankruptcy estate," *Elkins*, 2010 U.S. Dist. LEXIS 57139, at *10 (citing 11 U.S.C. § 323; *Schertz-Cibolo-Universal City v. Wright*, 25 F.3d 1281, 1284 (5th Cir. 1994)), although the trustee may abandon such assets. *Id.* A properly scheduled asset of the estate normally reverts back to the debtor's possession at the close of a bankruptcy proceeding if the trustee has taken no actions toward it. *Id.* at *12.

Significantly, Mr. Saunders admitted in his opposition to being the debtor in the bankruptcy petition at issue, and has implicitly admitted that his unpaid wages claim is an asset of the bankruptcy estate. *Pls.' Opp'n* at 1-2; *see Def.'s Reply* at 1-2. Further, the Plaintiffs request that the Court "either deny the motion to dismiss without prejudice, or . . . delay its ruling on the motion for 30 days to permit the dispute to be resolved between the parties and the Trustee." *Pls.' Opp'n* at 2. By the delay in the issuance of this decision, this Court effectively granted this part of Mr. Saunders' request.[2] But, much more than thirty days have passed and the Court has received no indication that the dispute between the parties and the Trustee has been resolved. Indeed, Mr. Saunders has supplied the Court no evidence that his petition is no longer pending in bankruptcy court or that the bankruptcy court has abandoned his FLSA and state law claims. *See Elkins*, 2010 U.S. Dist. LEXIS 57139, at *10-12.

---

[2] It was on October 9, 2013 that Mr. Saunders requested thirty days to "permit the dispute to be resolved between the parties and the Trustee." *Pls.' Opp'n* at 2.

10

The Plaintiffs have therefore not carried their burden of demonstrating federal subject matter jurisdiction in this Court over Mr. Saunders' legal claims against the Defendants.

B.   **State Law Claim Against Defendant Rena Getchell**

   1.   **Legal Standard: Federal Court Consideration of Maine's Wage and Hour Law**

The Defendants' motion to dismiss the state law claim against Ms. Getchell turns on a question of Maine law. Federal courts "are bound by the teachings of the state's highest court" when considering state law claims. *Phoung Luc v. Wyndham Mgmt. Corp.*, 496 F.3d 85, 88 (1st Cir. 2005) (quoting *N. Am. Specialty Ins. Co. v. Lapalme*, 258 F.3d 35, 37-38 (1st Cir. 2001)). A federal court may "make an informed prophecy" about what rule the state courts would likely follow, but the First Circuit has cautioned that federal courts should generally do so "only on interstitial questions." *Phoung Luc*, 496 F.3d at 88; *Samaan v. St. Joseph Hosp.*, 755 F. Supp. 2d 236, 247 (D. Me. 2010). "A federal court must not 'create new rules or significantly expand existing rules. We leave those tasks to the state courts.'" *Samaan*, 755 F. Supp. 2d at 247 (quoting *Phoung Luc*, 496 F.3d at 88).

Maine's wage and hour law states that "[a]ny employer shall be liable" for violating the wage or overtime provisions of the statute, 26 ME. REV. STAT. §§ 664, 670,[3] but the statute does not provide a definition of the term "employer." *See id.* § 663 (definitions section). When a term in Maine's wage and hour law "is not defined

---

[3]   The statutory provision on overtime states as follows: "An employer may not require an employee to work more than 40 hours in any one week unless 1 ½ times the regular hourly rate is paid for all hours actually worked in excess of 40 hours in that week." 26 ME. REV. STAT. § 664(3).

11

in either the relevant statutory provisions or in prior decisions of [the Law] [C]ourt, Maine Courts may look to analogous federal statutes, regulations, and case law for guidance." *Gordon v. Me. Cent. R.R.*, 657 A.2d 785, 786 (Me. 1995); *accord Affo*, 2013 U.S. Dist. LEXIS 76019, at *26-27. Notably, the Law Court has upheld a trial court's reference to federal caselaw interpreting the FLSA definition of "employer" in fashioning a test to determine whether a "collection of corporate and partnership entities" could be held liable as "joint employers" under Maine's wage and hour law. *Dir. of Bureau of Labor Standards v. Cormier*, 527 A.2d 1297, 1298-1300 (Me. 1987).

### 2. *Affo v. Granite Bay Care* and Maine's Wage and Hour Law

The Court must determine whether Ms. Getchell is an "employer," as the term is used in Maine's wage and hour law. In 2013, in *Affo*, Judge Hornby of this District resolved this issue as regards officers and shareholders of a corporation. 2013 U.S. Dist. LEXIS 76019, at *26-30. The plaintiffs in *Affo* sued a corporation and its corporate officers and shareholders for unpaid wages and overtime under the Maine wage and hour statute. *Id.* at *2. The individual defendants moved for summary judgment on the Maine wage and hour statutory claim, arguing that the Maine wage and hour law does not extend to individual shareholders and officers of the corporation. *Id.* at *26-30. Judge Hornby agreed with the defendants and granted summary judgment on the Maine wage and hour claim. *Id.* at *83.

Judge Hornby noted that the Legislature enacted Maine's statute over two decades after Congress enacted the FLSA, and the state statute's definitions of "employee" and "employ" closely track the definitions in the FLSA. *Affo*, 2013 U.S.

12

Dist. LEXIS 76019, at *28; *compare* 26 ME. REV. STAT. §§ 663(2) *and* 663(3), *with* 29 U.S.C. §§ 203(g), *and* 203(e). Additionally, certain portions of the Maine statute expressly incorporate FLSA standards; for example, the overtime pay provision states that the "regular hourly rate . . . does not include any sums excluded from the definition of 'regular rate' under the [FLSA]." *Id.* (quoting 26 ME. REV. STAT. § 664(3)).

By contrast, the FLSA defines "employer" to include "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). Judge Hornby noted that the First Circuit has commented that the FLSA definition of employer is so broad that it "require[s] . . . application to many persons and working relationships, which prior to [the FLSA] were not deemed to fall within an employer-employee category." *Id.* at *27 (quoting *Baystate Alternative Staffing v. Herman*, 163 F.3d 668, 675 (1st Cir. 1998)); *see Donovan v. Agnew*, 712 F.2d 1509, 1510 (1st Cir. 1983) ("Taken literally this language would support liability against any agent or employee with supervisory power over other employees. It has, indeed, been interpreted expansively").

Significantly, however, Maine law does not track the FLSA with respect to the definition of "employer." In fact, Judge Hornby pointed out that the statute provides no definition of the term, *see* 26 ME. REV. STAT. § 663. Furthermore, Judge Hornby determined that the Maine courts have been "generally reluctant to disregard the legal entity." *Id.* at *28-29 (quoting *Johnson v. Exclusive Props. Unlimited*, 1998 ME 244, ¶ 5, 720 A.2d 568, 571). Judge Hornby concluded that

extending Maine wage and hour laws to individual shareholders and officers would represent a "drastic step," one that he was not prepared to make. *Id.* at \*28-30.

This Court will not reinvent Judge Hornby's well-crafted wheel and accepts his *Affo* analysis. The Plaintiffs seek to distinguish this case from *Affo* on two grounds: (1) that Judge Hornby ruled that the issue would have to be resolved by the state court; and, (2) that Judge Hornby did not "deal with the body of state law that makes *officers and owners liable*, as opposed to shareholders, for acts in which they directly participate."[4] *Pls.' Opp'n* at 4. Neither distinction is convincing. First, although Judge Hornby commented in a footnote that "this is a close question" and the issue "may ultimately need to be resolved by certification to the Law Court," *Affo*, 2013 U.S. Dist. LEXIS 76019, at \*30 n.15, Judge Hornby did in fact rule on the defendants' motion for summary judgment and granted it. *Id.* at \*83. Also, the individual defendants in *Affo* were impleaded as shareholders and officers of the corporation and Judge Hornby expressly declined "to extend liability under Maine's wage and hour law to individual shareholders and officers." *Id.* at \*30. The Plaintiffs in this case are suing Rena Getchell as "an owner, the

---

[4] The Plaintiffs note that "[a] motion is pending before the *Affo* [C]ourt to clarify its ruling in this regard." *Pls.' Opp'n* at 4. In that motion, the plaintiffs admitted that Judge Hornby's conclusion (in *Affo*, 2013 U.S. Dist. LEXIS 76019) encompassed both shareholders and officers, but argued that his Order only refers to the "reluctance of Maine courts to hold *shareholders* individually liable." *Mot. in Limine Regarding Admissibility of Evidence Concerning the Liability of Defendants Mumpini and Alicea Under State Law* at 1, Affo v. Granite Bay Care, Inc., 2:11-cv-482-DBH (D. Me. Aug. 8, 2013) (ECF No. 99) (emphasis in original). The plaintiffs stated that they "failed in [their] brief to point out the distinction in Maine law between the liability of shareholders versus the liability of officers and directors," *id.*, and proceeded to make the same arguments that the Plaintiffs here raise regarding Ms. Getchell's potential liability. *Id.* at 1-3. Judge Hornby denied the plaintiffs' motion for timing and procedural reasons. *See Minute Entry*, Affo, *supra* (D. Me. Oct. 24, 2013) (ECF No. 144).

14

President, and the Treasurer" of The Getchell Agency, Inc. *Second Am. Compl.* ¶ 5. Thus, Judge Hornby's ruling in *Affo* applies to this lawsuit.

### 3. Maine State Law

Despite the clear message in *Affo*, the Plaintiffs strenuously contend that Judge Hornby gave short shrift to their contention that the Maine courts have held officers and owners liable for acts in which they directly participate. *Pls.' Opp'n* at 4. Although there is no direct authority on the Maine wage and hour statute, in 2012, the Maine Supreme Judicial Court addressed a similar argument in a case involving supervisor liability under the Maine Whistleblowers' Protection Act (MWPA) and the Maine Human Rights Act (MHRA). *Fuhrmann v. Staples Office Superstore E., Inc.*, 2012 ME 135, 58 A.3d 1083. In *Fuhrmann*, the plaintiff sued four individual supervisors under both the MWPA and the MHRA. *Id.* The individual supervisors moved to dismiss on the ground that neither statute provided for individual supervisor liability. *Id.* ¶ 12, 58 A.3d at 1089. Despite statutory language more friendly to the plaintiffs than the language here and despite the Maine Human Rights Commission's contrary interpretation, the Maine Supreme Judicial Court declined to conclude that either Act provided for individual liability. *Id.* ¶¶ 22-35, 58 A.3d at 1093-98. Significantly, the *Fuhrmann* Court wrote that "[i]f the Legislature had intended to create individual supervisor liability it would have done so explicitly in much clearer terms" and "such a significant change in employment law would be much clearer and more direct." *Id.* ¶ 34, 58 A.3d at 1098. Like *Fuhrmann*, this Court declines to extend Maine wage and hour liability to

corporate officers and owners in the absence of a clearer legislative directive to do so.[5]

The Plaintiffs next argue that Maine law provides for individual liability in the corporate context under two theories: (1) piercing the corporate veil; and (2) where the officers, directors, and others participated in the wrongful acts. *Pls.' Opp'n* at 3. The Plaintiffs are correct that the Law Court has put forth two theories under which corporate employees or agents may be found individually liable to third parties. First, the Law Court allows for a "piercing the corporate veil" theory of liability, where a defendant abuses the corporate form and an unjust or inequitable result would occur if the court recognized only a separate corporate existence. *Lebanon*, 2011 ME 78, ¶ 8, 25 A.3d at 953; *Blue Star*, 2009 ME 101, ¶ 43, 980 A.2d at 1280; *Pilecki*, 2006 ME 84, ¶ 10, 901 A.2d at 194-95. The Defendants maintain there is no allegation giving rise to this theory of liability, *Defs.' Mot.* at 3-4, and the Plaintiffs do not dispute this assertion. *See Pls.' Opp'n* at 3-6.

Under a second theory of liability, "[c]orporate officers who participate in wrongful acts can be held liable for their individual acts, and such liability is distinct from piercing the corporate veil." *Blue Star*, 2009 ME 101, ¶ 44, 980 A.2d at 1280 (quoting *Pilecki*, 2006 ME 84, ¶ 13, 901 A.2d at 195). The Plaintiffs insist that, under *Blue Star*, Ms. Getchell's participation in the "failure to pay the

---

[5] The Plaintiffs argue that *Fuhrmann* is limited to supervisors, not owners. *Pls.' Opp'n* at 6. Although it is true that the *Fuhrmann* Court addressed claims against individuals as supervisors, not as owners, the significance of *Fuhrmann* is that the Maine Supreme Judicial Court refused to extend liability to individuals—as opposed to the employer—without more direct legislative guidance.

16

employees for the nighttime hours that they worked" qualifies as a wrongful act. *Pls.' Opp'n* at 3. The Defendants reject this assertion and insist that, under *Lebanon*, "such wrongful acts must be separate and distinct from the acts of the corporation" for personal liability to follow. *Defs.' Reply* at 4.

*Lebanon* is instructive. There, the Town of Lebanon filed a lawsuit against a limited liability company (LLC) and its sole member,[6] alleging violations of Maine's junkyard and graveyard statute, 30-A ME. REV. STAT. §§ 3751-3760. *Lebanon*, 2011 ME 78, ¶ 9, 25 A.3d at 953. The *Lebanon* Court considered whether judgment could issue against the sole member individually. Preliminarily, the Law Court noted that under the Maine statute governing LLCs, "a member of a limited liability corporation is not individually liable for the debts or liabilities of the LLC." *Id.* ¶ 8, 25 A.3d at 953 (citing 31 ME. REV. STAT. §645(1) (2010) (repealed July 1, 2011)). After finding that the LLC appeared to be fully under the individual defendant's control, the Law Court addressed the two recognized theories of individual liability: piercing the corporate veil and individual wrongful acts. First, it concluded that the record contained no evidence to suggest that the defendant had "abused the privilege of incorporating, or that an unjust result would occur if only the [corporate entity] were held liable on the [plaintiff's] complaint." *Id.* ¶ 9, 25 A.3d at 953.

The Law Court then commented on the second theory of liability in a footnote: "Neither is there any evidence or a finding that [the individual defendant] undertook any individual acts of wrongdoing *distinct from those of the LLC*." *Id.* ¶ 9

---

[6] A member of an LLC is an owner of the LLC. *See* 31 ME. REV. STAT. § 602(12) (2010) (repealed July 1, 2011).

17

n.3, 25 A.3d at 953 n.3 (citing *Blue Star*, 2009 ME 101, ¶ 24, 980 A.2d at 1280) (emphasis added). Although this comment is dictum, it provides some guidance as to "what rule the state courts would likely follow"—namely, how the Maine Supreme Judicial Court is likely to interpret the term "wrongful act" as a basis for extending liability to individual shareholders and officers. In adding "distinct from those of the LLC," the Law Court shed light on *Blue Star* and *Pilecki*, where it referred to "participation in a wrongful act" as the basis for liability. *See Blue Star*, 2009 ME 101, ¶¶ 44-48, 980 A.2d at 1280-81; *Pilecki*, 2006 ME 84, ¶¶ 13-14, 901 A.2d at 195).

Here, the Plaintiffs make no allegation that Ms. Getchell "undertook any individual acts of wrongdoing distinct from those of" The Getchell Agency. *Lebanon*, 2011 ME 78, ¶ 9 n.3, 25 A.3d at 953 n.3. In fact, the Second Amended Complaint states that Ms. Getchell "has acted at all times material herein directly and indirectly in the interest of said corporation in relation to its employees." *Second Am. Compl.* ¶ 5. Thus, based on the record before the Court on this motion to dismiss, there are no facts upon which Ms. Getchell could be found liable on either the "piercing the corporate veil" or the "wrongful acts" theory of liability.

After examining the Law Court's precedents on the individual liability of owners acting in an executive—as opposed to a shareholder—capacity, the Court concludes that the Second Amended Complaint fails to state a claim against Ms. Getchell under Maine's wage and hour law upon which relief can be granted. The

18

Court therefore grants the Defendants' motion to dismiss as to the Maine wage and hour law claim against Rena Getchell.

## III. CONCLUSION

The Court GRANTS the Defendants' Renewed and Supplemental Motion to Dismiss (ECF No. 37), dismissing the claims of Plaintiff Kristopher Saunders without prejudice and dismissing the Maine state law claim under 26 ME. REV. STAT. § 664(3) against Defendant Rena Getchell.

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
CHIEF UNITED STATES DISTRICT JUDGE

Dated this 11th day of February, 2014