UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| KRISTOPHER T. SAUNDERS, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | 1:13-cv-00244-JAW |
| | ) | |
| THE GETCHELL AGENCY, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER ON MOTION FOR CONDITIONAL CERTIFICATION**

In this Fair Labor Standards Act and Maine wage and hour law case, the named plaintiffs move for conditional certification of their FLSA claim as a collective action. The Court grants the motion because the Plaintiffs have made a sufficient factual showing that the named plaintiffs and other employees suffered from a common unlawful plan.

## I. STATEMENT OF FACTS

### A. Procedural History

On July 7, 2013, Kristopher Saunders and Cory Scribner filed "an individual, collective, and class action" against The Getchell Agency, Inc. and Rena Getchell.[1] *Compl.* at 1 (ECF No. 1). In the latest Complaint,[2] the proposed members of the

1 On February 11, 2014, the Court dismissed Mr. Saunders' claims without prejudice. *See Order on Mot. to Dismiss* at 19 (ECF No. 51). The dismissal did not impact the claims of the other named and potential opt-in plaintiffs.

2 The Plaintiffs have twice amended their complaint without objection by the Defendants. *Mot. for Leave to File Second Am. Compl. and to Add Additional Parties Pl. with Incorporated Mem. of Law* (ECF No. 23); *Resp. of Defs. to Second Mot. to Am. Compl.* (ECF No. 29); *Order* (ECF No. 31); *Second Am. Collective and Class Action Compl.* (ECF No. 32) (*Second Am. Compl.*). The Second

collective action are defined as "House Managers" employed by the Defendants as caretakers of disabled individuals "who were paid on an hourly basis sometime during the three years prior to the Complaint and who were required to be with consumers Twenty-four (24) hours per day." *Second Am. Compl.* ¶ 33. Individually and on behalf of proposed members of the collective action, the Plaintiffs allege that the Defendants were illegally denied overtime compensation under the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq.*[3] *Id.* at 2-15.

On September 26, 2013, the Plaintiffs moved to conditionally certify the collective action. *Pls.' Mot. for Conditional Certification and Provision of Notice Under 29 U.S.C. §216(b) and Mem. in Support Thereof* (ECF No. 34) (*Pl.'s Mot.*). The Defendants filed their opposition on October 17, 2013. *Opp'n of Defs. to Pls.' Mot. for Conditional Certification* (ECF No. 41) (*Defs.' Opp'n*). The Plaintiffs replied on October 29, 2013. *Pls.' Reply to the Opp'n of Defs. to Pls.' Mot. for Conditional Certification* (ECF No. 46) (*Pls.' Reply*).

### B. The Parties' Positions

#### 1. The Plaintiffs' Motion

---

Amended Complaint includes four additional named plaintiffs: Jared Forrest, Taylor Perkins, Karey Ann Sinclair, and Katelin Varney. *Second Am. Compl.* at 1. The remainder of this order references only the Second Amended Complaint.

[3] The Second Amended Complaint defines two proposed group classifications. The first—the collective action class—is defined pursuant to the Fair Labor Standards Act, 29 U.S.C. § 216(b), and is the class at issue on this motion for conditional certification. *Second Am. Compl.* ¶ 33. The second—the class action class—is defined pursuant to Rule 23 of the Federal Rules of Civil Procedure, and alleges violations of Maine state minimum wage and overtime law, 26 M.R.S. § 664(3). *Id.* ¶ 44. The Rule 23 certification class, based on the state law claims, is not at issue on this motion.

In their motion, the Plaintiffs define the similarly situated group for purposes of the proposed FLSA collective action as the following: "Getchell employees, who worked for The Getchell Agency, Inc., during the Fair Labor Standards Act statute of limitations period of three years, who are all uniformly classified by Getchell as House Managers." *Pls.' Mot.* at 5. The Plaintiffs note this group only includes employees who worked around Bangor, Maine. *Id.*

**a. Statement of Facts**

The Plaintiffs' motion contains a Statement of Facts.[4] *Id.* at 2-3. They assert that the Second Amended Complaint "shows without any doubt" that the named plaintiffs all work as House Managers, as defined by The Getchell Agency, and have not been paid for hours worked between 10:00 p.m. and 6:00 a.m. *Id.* at 3. The Plaintiffs maintain that during these unpaid hours, House Managers retain "significant duties," in particular retaining responsibility for dependent persons, which requires them to remain on The Getchell Agency's premises throughout the night. *Id.* at 2-3. This obligation includes being required to sleep on couches and share bedrooms with others—frequently with "another worker of the opposite sex with whom they are not familiar." *Id.* Finally, the Plaintiffs claim they have made no agreement to exclude work during these hours from compensation. *Id.*

---

[4] In their motion, the Plaintiffs did not provide a citation for the facts in this paragraph. *Pls.' Mot.* at 2-3. However, all of the statements asserted in the Statement of Facts are also made in the Second Amended Complaint. *See Second Am. Compl.* ¶¶ 29-42. As facts alleged in the pleadings are properly considered on this motion, the Court considers the facts set out in the Statement of Facts. *See Prescott v. Prudential Ins. Co.*, 729 F. Supp. 2d 357, 364 (D. Me. 2010) (stating that a motion for conditional certification is determined "based solely on the pleadings and any affidavits which have been submitted") (quoting *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1218 (11th Cir. 2001)).

The Plaintiffs also assert that their attached affidavits demonstrate the existence of potential opt-in parties with similar claims. *Id.* at 3 (citing *id.* Attach 1 *Decl. of Roy M. Smith* (*Roy Smith Aff.*); *id.* Attach 2 *Decl. of Jason A. Buck*; *id.* Attach 3 *Decl. of Chelsie Smith* (ECF No. 34)).

**b. Argument**

The Plaintiffs seek conditional certification of a collective action pursuant to 29 U.S.C. §216(b). *Pls.' Mot.* at 3. The Plaintiffs offer that at this stage—the first in a two-stage process, usually decided early in a case before discovery has taken place—the Court "decides only whether there appears to be a group of similarly situated putative class members for whom it is appropriate to give notice of their right to opt-in to the action." *Id.* at 3-4 (citing *Prescott v. Prudential Ins. Co.*, 729 F. Supp. 2d 357 (D. Me. 2010)). The Plaintiffs urge the Court to decide their motion using a "fairly lenient test" that places the burden on the Plaintiffs to make a "modest factual showing that [they] and other employees with similar, but not necessarily identical jobs, suffered from a common . . . policy or plan." *Id.* at 4 (quoting *Prescott*, 729 F. Supp. 2d at 357). The Plaintiffs note the second stage of certification typically takes place after discovery, when the case has become more defined; the Court determines whether to permit the collective action to proceed or to decertify it at that stage. *Id.* (citing *Sandoz v. Cingular Wireless*, 553 F.3d 913, 915 n.2 (5th Cir. 2008).

With this backdrop, the Plaintiffs first argue that House Managers described above are "a clearly defined group of similarly situated Getchell employees" who

work in the Bangor area. *Id.* at 5. Next, they argue the "overarching legal question" for all House Managers will be the same: "[B]etween the hours of 10:00 p.m. and 6:00 a.m. did they not have private quarters in a homelike environment for sleeping purposes" and "did they make binding reasonable agreements not to be compensated for such hours?" *Id.* Given this characterization of the issues, the Plaintiffs insist that "[u]nlike many cases, this is not a situation where because of many different locations and many different job titles, the plaintiffs cannot make an initial superficial showing of being 'similarly situated.'" *Id.* Instead, "all of the named, opt-in, and potential collective action class members have the same job – House Managers caring for disabled persons in Bangor, Maine," which the Plaintiffs maintain suffices to meet "the lenient standards for conditional certification." *Id.* at 5-6.

Finally, the Plaintiffs state "[t]he Court should review and approve an appropriate notice to potential plaintiffs ensuring that the notice is not an endorsement of any action and that the notice is fair and factual in all respects." *Id.* at 6. The Plaintiffs provided a draft notice and opt-in form for Court review and approval. *Id.* Attach 4 *Notice of Pendency of FLSA Collective Lawsuit* (*Notice of Pendency*); *id.* Attach 5 *Opt-in Consent Form* (*Consent Form*) (ECF No. 34). They state that the general rule, which would enable the Plaintiffs to promptly send out such 216(b) notice, is that a court should require defendants to "identify all potential opt-in plaintiffs in a computer readable data file." *Id.* at 6-7 (quoting *In re*

*Penthouse Executive Club Comp. Litig.*, No. 10 Civ. 1145 (NRB), 2010 U.S. Dist. LEXIS 114743, at *17-20 (S.D.N.Y. Oct. 27, 2010)).

**2. The Defendants' Opposition**

In response, the Defendants assert that the Plaintiffs' claims are "intensively individual and fact-dependent" and are not suitable to be decided as part of a collective action. *Defs.' Opp'n* at 1. While acknowledging that the Plaintiffs' burden has been characterized by courts as "'not particularly stringent' and 'fairly lenient,'" *id.* at 2 (quoting *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1260 (11th Cir. 2011)), the Defendants maintain that this burden "cannot be satisfied simply by unsupported assertions." *Id.* at 2 (quoting *Myers v. Hertz Corp.*, 624 F.3d 537, 555 (7th Cir. 2010)). The Defendants submit that the reason opt-in plaintiffs must be "similarly situated" is to demonstrate that certification "is likely to provide more orderly and sensible case management than separate adjudication"; by contrast, certification should be denied where "individual factual inquiries are likely to predominate and judicial economy will be hindered rather than promoted by certification." *Id.* (quoting *MacGregor v. Farmers Ins. Exchange*, No. 2:11-CV-03088, 2011 U.S. Dist. LEXIS 80361, at *7-14 (D.S.C. July 22, 2011)). The Defendants suggest that conditional certification has largely been denied when the core issue involves "allegations of 'off the clock' violations." *Id.* at 3 (collecting cases).

Turning to this case, the Defendants argue the core issue is whether each potential plaintiff's sleep time was compensable and that individual factual

inquiries are crucial to that determination. *Id.* at 4-14. They contend that liability turns on "an assessment of all the circumstances concerning a given employee's situation," *id.* at 6, and point to the following Interpretative Guidance from the Department of Labor:

> Where an employee is required to be on duty for 24 hours or more, the employer and the employee may agree to exclude bona fide meal periods and a bona fide regularly scheduled sleeping period of not more than 8 hours from hours worked, provided adequate sleeping facilities are furnished by the employer and the employee can usually enjoy an uninterrupted night's sleep. If sleeping period is of more than 8 hours, only 8 hours will be credited. Where no expressed or implied agreement to the contrary is present, the 8 hours of sleeping time and lunch periods constitute hours worked.

*Id.* at 4 (quoting 29 C.F.R. 785.22(a)). Expanding upon this administrative guidance, the Defendants cite *Sidell v. Residential CRF, Inc.*, No. 1:08-cv-1699-DML, 2010 U.S. Dist. LEXIS 121635 (S.D. Ind. Nov. 12, 2010), for the proposition that "an implied agreement to deduct sleep time from an employee's compensation clearly exists if an affected employee does not assert any verbal or written protest to the arrangement within a reasonable period of time of adoption of the policy." *Defs.' Opp'n* at 4 (quoting *Sidell*, 2010 U.S. Dist. LEXIS 121635, at *16). Under *Sidell*, in the case of an employee who protests such a policy but continues to work, such continued employment is "evidence—but not necessarily conclusive—of her implied consent to its terms." *Id.* (quoting *Sidell*, 2010 U.S. Dist. LEXIS 121635, at *17). Based on this authority, the Defendants contend that all potential plaintiffs' claims should not be adjudicated in a collective action because the Court will be required to

make an individualized determination as to whether each individual plaintiff had an express or implied agreement with the Defendants. *Def.'s Opp'n* at 4-5.

Further, the Defendants allege that the phrase "adequate sleeping facilities" itself requires an individualized, fact-intensive inquiry, "not susceptible to efficient case management through collective action procedures." *Id.* at 5. They also put forth Interpretive Guidance stating that when an employee resides on an employer's premises for an "extended period of time," the entire time spent on the employer's premises is not considered working time. *Id. (*citing 29 C.F.R. § 785.23). Yet another problem with conditional certification, according to the Defendants, is that the FLSA companionship exception might be applicable for some individual plaintiffs. *Id.* at 10. This provision exempts from overtime requirements "an employee employed in domestic service employment to provide companionship services for individuals who (because of age or infirmity) are unable to care for themselves." *Id.* (quoting 29 C.F.R. § 213(a)(15)). The Defendants maintain that the Court will be required to make an individualized fact-specific determination on the FLSA companionship exception. *Id.* at 10.

The Defendants provide examples of the diversity in work schedules, sleeping arrangements, and compensation agreements among House Managers. *See id.* at 7-9. Reiterating that application of the law in this case will turn on individualized, fact-sensitive inquiries for each plaintiff, they again argue "Plaintiffs' claims cannot be efficiently or practically adjudicated through a collective action." *Id.* at 9.

The Defendants conclude that the Plaintiffs have not made a sufficient showing that there was a "common unlawful policy or plan." *Id.* at 11-14. The Defendants assert that not all of the hours at issue (10:00 p.m. to 6:00 a.m.) may be considered hours worked. *Id.* at 10-12. The Defendants also contend that the Plaintiffs have relied only on a 1988 Department of Labor Enforcement Policy Letter for the proposition that the FLSA requires House Managers be given "private quarters in a homelike environment." *Id.* at 11-12. Finally, the Defendants argue that the Plaintiffs have not made the "modest factual showing" that they suffered under a common unlawful policy or plan, because the Plaintiffs' "evidence does not suggest that a collective action would involve anything other than inquiries into independent decisions regarding each plaintiffs' . . . hours and individual circumstances." *Id.* at 13-14 (internal punctuation omitted).

**3. The Plaintiffs' Reply**

In reply, the Plaintiffs suggest "there is a great deal of agreement" as to the relevant question on this motion, which they frame as "does there exist a group of similarly situated persons who were subject to the same policies and that might participate in this case so that it seems appropriate to notify them?" *Pls.' Reply* at 1. They assert that "an examination of the two pleadings" demonstrates that several facts common to the putative class and several common legal issues exist, including:

> (1) that the defendants employ House Managers who work 24 hour shifts;

(2) that the House Managers work "mostly" in single family structures owned by The Getchell Agency in one Bangor neighborhood;

(3) that the Plaintiffs are not paid for the eight hours worked between 10:00 p.m. and 6:00 a.m.;

(4) that House Managers are not regularly paid for the evening and nighttime unless something unusual happens and they report it;

(5) that thirty-eight opt-in requests have been filed;

(6) that the legal issue in this case is "[t]he extent of the privacy of the sleeping quarters due to the plaintiffs"; and

(7) that a Department of Labor advice letter, 29 C.F.R. § 785.23, allows for up to eight hours of sleeping time to be excluded from compensable time only if the sleeping facilities are "adequate."

*Id.* at 1-2.

The Plaintiffs next argue that disagreement between the parties on two legal issues demonstrates that there are similarly situated class members in this case. *Id.* at 2. First, Plaintiffs "claim that the mandate under 29 C.F.R. § 785.23 is to count all hours where the employee is at work as 'hours worked' unless there exists a 'reasonable agreement of the parties which takes into consideration all of the pertinent facts,'" while the Defendants "argue that an 'agreement' of the parties is not required in order . . . to exclude certain hours from 'hours worked.'" *Id.* (quoting *Defs.' Opp'n* at 6). Second, the Plaintiffs maintain that no agreement to exempt compensation for all hours worked may be made where, as here, the workers "must

sleep on a couch or lack privacy," while the Defendants "imply that the parties can make whatever agreement they want." *Id.* Out of these disagreements, the Plaintiffs insist that "[t]he conclusion must be . . . that the plaintiffs are similarly situated with respect to issues that are raised by the employer's policies, policies that are applicable to all House Managers." *Id.* at 2-3.

Finally, the Plaintiffs dispute the Defendants' assertion that "off-the-clock" disputes are not appropriate for collective action, stating that First Circuit law is otherwise. *Id.* at 3 (citing *Manning v. Boston Medical Ctr. Corp.*, 725 F.3d 34 (1st Cir. 2013)). The Plaintiffs further reiterate that this motion only addresses conditional certification, that the Defendants will have "ample opportunity" to later demonstrate that the plaintiffs are not similarly situated, and that the Court will have "many tools at its disposal" to address the contours of a putative class at this later time. *Id.*

## II. DISCUSSION

### A. FLSA Conditional Certification

#### 1. Legal Standard

The FLSA requires employers to pay employees overtime wages for hours worked in excess of forty hours per week, unless an exception applies. 29 U.S.C. §§ 207(a)(1), 213. An employer who violates the overtime provisions of the FLSA is liable to the employees affected, who may bring a private right of action either individually or as part of a collective action on behalf of "themselves and other

employees similarly situated."[5] 29 U.S.C. § 216(b); *Prescott*, 729 F. Supp. 2d at 362. An action does not become a collective action, however, "unless other plaintiffs affirmatively opt into the class by giving written and filed consent, and the trial court certifies that such opt-in plaintiffs are in fact similarly situated and that the collective action is procedurally manageable and fair." *Prescott*, 729 F. Supp. 2d at 362 (internal quotations and citations omitted).

Neither the Supreme Court nor the First Circuit has directly addressed what qualifies as similarly situated,[6] but district courts—including this Court—have adopted a two-tiered approach to the certification of collective actions under the

---

[5] An action to enforce the overtime provisions of the FLSA has a two year statute of limitations period, "except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." 29 U.S.C. § 255(a). The Plaintiffs state that the statute of limitations period for their FLSA claim is three years and the Defendants do not claim otherwise. Additionally, the facts in this motion do not allow the Court to determine whether the three-year statute of limitations period applies at this stage. *See Reich v. Newspapers of New England, Inc.*, 44 F.3d 1060, 1079 (1st Cir. 1995) ("FLSA violations are willful where the employer 'knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute'") (quoting *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988)). The Court assumes the three-year period applies for the purposes of this motion. *See Prescott*, 729 F. Supp. 2d at 370 (concluding that "[w]illfulness is a question going to the merits of the case that I do not decide at this time. At this stage . . . , justice is best served by notice reaching the largest number of potential plaintiffs . . . ."); see also *Albanil v. Coast 2 Coast, Inc.*, Civil Action No. H-08-486, 2008 U.S. Dist. LEXIS 93035, at *18 (S.D. Tex. Nov. 17, 2008) ("[N]otice is proper for potential class members employed by the defendant within the full three-year period; holding otherwise would require the plaintiff to prove willfulness without the benefit of full discovery").

[6] The First Circuit recently addressed conditional certification of a FLSA collective action in *Manning v. Boston Medical Ctr. Corp.*, 725 F.3d 34, 58-59 (1st Cir. 2013). However, the *Manning* Court also dealt jointly with a class action under Federal Rule of Civil Procedure 23, and proceeded to state that "[a]lthough Rule 23 and the FLSA impose different certification requirements, the district court used the same reasoning to strike both sets of allegations, and the parties by and large do not distinguish between the two regimes. We consequently assume that the same analysis applies to both." *Id.* at 58. The First Circuit also stated that "[a]lthough we treat class and collective requirements as the same for the purposes of this appeal, we do not suggest that this conflation is appropriate in all circumstances." *Id.* at 58 n.15. In other words, the *Manning* Court did not directly address the FLSA collective action standard for "similarly situated." It did, however, use language indicating approval of the conditional certification stage generally. *E.g., id.* at 60 ("[T]he trial court would have been well within its discretion to defer ruling on the conditional certification request until a later stage of the case").

FLSA. *Johnson v. VCG Holding Corp.*, 802 F. Supp. 2d 227, 233 and n.5 (D. Me. 2011) (collecting cases); *Prescott*, 729 F. Supp. 2d at 362-63. The first stage "determines whether notice should be given to potential collective action members and usually occurs early in a case, before substantial discovery, 'based only on the pleadings and any affidavits which have been submitted.'" *Prescott*, 729 F. Supp. 2d at 363-64 (quoting *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1218 (11th Cir. 2001)). The second stage takes the form of a motion to decertify after discovery has been completed, at which time the court must "make a factual determination as to whether there are similarly-situated employees who have opted in." *Id.* at 365 (quoting *Sandoz*, 553 F.3d at 916 n.2).

The parties agree that this motion deals with "conditional certification," or the first stage. At this stage, the Plaintiffs have "the burden of showing a reasonable basis for their claim that there are other similarly situated employees." *Id.* at 364 (quoting *Morgan*, 551 F.3d at 1260). The reasonable basis for their claim is also referred to as "a modest factual showing" that both the Plaintiffs "and other employees, with similar but not necessarily identical jobs, suffered from a common unlawful plan." *Johnson*, 802 F. Supp. 2d at 234 (quoting *Prescott*, 729 F. Supp. 2d at 364). The standard has also been called "'not particularly stringent,' 'fairly lenient,' flexible,' 'not heavy,' and 'less stringent than for joinder under Rule 20(a) or for separate trials under 42(b).'" *Id.* at 234 (citation omitted) (adopting "fairly lenient standard"); *Prescott*, 729 F. Supp. 2d at 364 (same).

**2. Similarly Situated Employees**

The Plaintiffs need only make a modest factual showing that the named plaintiffs and other employees with similar jobs suffered from a common unlawful plan, and they have made such a showing here. The Second Amended Complaint asserts that all named plaintiffs were, at different periods within the statute of limitations, required to sleep on a couch between the hours of 10:00 p.m. and 6:00 a.m., or share a bedroom with another employee, and each was required to remain on the employer's premises and care for dependent persons during this time. *Second Am. Compl.* ¶¶ 12 – 17. These work conditions occurred during workweeks in which all plaintiffs always worked more than forty hours, even before counting their work between 10:00 p.m. and 6:00 a.m. *Id.* ¶ 21. The Second Amended Complaint also alleges that "[t]he parties made no agreement to exclude work performed during hours 10:00 [p.m.] to 6:00 [a.m.] from hours to be compensated." *Id.* ¶ 26. The sworn affidavits of three potential opt-in plaintiffs make the same assertions. *See, e.g.*, *Roy Smith Aff.* ¶ 9 ("I was not paid for the hours from 10:00 p.m. to 6:00 a.m., even though I was required to deal with emergencies and to arise from my sleep occasionally and to attend the disabled person when necessary"). The Plaintiffs' motion makes clear that these facts relate to a group of employees with similar—if not identical—job responsibilities: employees of The Getchell Agency, Inc., who work as House Managers in the Bangor area.

While the Defendants admit this is a fairly lenient burden, they quote *Myers v. Hertz Corp.*, 624 F.3d 537 (7th Cir. 2010), for the proposition that this burden "cannot be satisfied simply by unsupported assertions." *Id.* at 555. In *Meyers*, the

Eleventh Circuit noted that unsupported assertions are insufficient, but pointed out the burden "should remain a low standard of proof because the purpose of the first stage is merely to determine *whether* 'similarly situated' plaintiffs do in fact exist." *Id*. (emphasis in original). The low standard of proof defines this stage, and the Plaintiffs have carried their light burden. The core of the Defendants' argument against certification is that "evidence that an employee is not paid for eight hours of sleep time does not establish a per se violation of the FLSA." *Defs.' Opp'n* at 6. The Court agrees with this legal proposition; under the FLSA, an implied agreement to deduct sleeping time may be recognized, certain hours may be exempt from compensable time when an employee resides on the premises for an "extended period of time," and a companionship exception may exempt certain individuals from the overtime provisions of 29 U.S.C. 207(a)(1). Further, the Defendants have supported their arguments with facts suggesting that some of these legal issues may be relevant in this case. *See, e.g.*, *Defs.' Opp'n* at 8-9.

But the Court does not agree that the Defendants' characterization of the Plaintiffs' evidentiary burden supports a denial of the Plaintiffs' request for conditional certification. The "modest showing" required at this stage is a factual showing, and the Plaintiffs have set forth sufficient facts to make a showing that there are similarly situated employees of The Getchell Agency (House Managers) who suffered from a common illegal practice—the nonpayment of overtime compensation under 29 U.S.C. §§ 207(a)(1) and 216. Based on the current record, without having provided the Plaintiffs and opt-in plaintiffs a chance for discovery,

"a conclusive determination that the exemption applies, or does not, would be premature." *Albanil v. Coast 2 Coast, Inc.*, No. H-08-486, 2008 U.S. Dist. LEXIS 93035, at *24-25 (S.D. Tex. Nov. 17, 2008). As Judge Hornby has noted, under this standard "the initial stage analysis typically results in conditional certification of a collective action." *Prescott*, 720 F. Supp. 2d at 364.

The reasoning behind this light burden is, in part, that "[t]he prejudice to [the Plaintiffs] of skipping the notice stage could be significant, while the prejudice to [the Defendants] is minimal since [they] are able to move for decertification at the close of discovery." *Id.* at 366. In fact, although the Defendants cite *Threatt v. CRF First Choice, Inc.*, No. 1:05cv117, 2006 U.S. Dist. LEXIS 50934, at *45 (N.D. Ind. July 21, 2006)), the case actually supports conditional certification at this stage. In *Threatt*, the district court was dealing with the second phase of the process—the decertification stage. *Id.* at *45-46. The district judge observed that the "further discovery and analysis that would be required . . . renders a collective action completely unworkable." *Id.* at *45. Indeed, the *Threatt* Court granted a motion for conditional certification before it denied the certification at the second stage. *Id.* at *6. Once the Court conditionally certifies this case, the Defendants will have the opportunity to engage in discovery and to file, if appropriate, a motion to decertify. Any prejudice to a defendant by certification is taken into account more concretely at the motion for decertification stage, after a court has approved conditional certification and allowed discovery to take place.

The Plaintiffs have made a sufficient factual showing that the House Managers, as defined by the Plaintiffs, are a similarly situated group of employees and, as alleged by the Plaintiffs, have suffered from a common unlawful plan. The Court concludes that conditional certification is appropriate.

**B. Current Opt-in Plaintiffs**

In their reply, the Plaintiffs state that thirty-eight opt-in requests have been filed. *Pls.' Reply* at 2; *see, e.g.*, *Pl.'s Notice of Consent Filing* (filing opt-in plaintiff consents for twenty-two persons) (ECF No. 12). Two additional consents have been submitted since the filing of the reply. *See Pl.'s Notice of Consent Filing* (ECF No. 47); *Pl.'s Notice of Consent Filing* (ECF No. 48). By filing their opt-in requests, those individuals tolled the statute of limitations period on their claim, 29 U.S.C. §§ 256-57, and with this conditional certification, the opt-in parties automatically become plaintiffs. *Prescott*, 729 F. Supp. 2d at 370. If the collective action is decertified at the next stage, the opt-in plaintiffs' claims will be dismissed without prejudice. *Id.* (citing *Hipp*, 252 F.3d at 1218).

**C. Court-Ordered Notice**

Although the FLSA does not expressly provide for court-ordered notice of a pending collective action, the Supreme Court has held that "district courts have discretion . . . to implement 29 U.S.C. 216(b) . . . by facilitating notice to potential plaintiffs." *Prescott*, 729 F. Supp. 2d at 362-63 (quoting *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 169 (1989)); *Johnson*, 802 F. Supp. 2d at 233. The Plaintiffs request that the Court review and approve their proposed notice and opt-in forms informing potential plaintiffs of their rights, as part of the Court's "managerial

responsibility to oversee the joinder of additional parties to ensure that the task is accomplished in an efficient and proper way." *Pls.' Mot.* at 6 (quoting *Sperling*, 493 U.S. at 170-71); *see Notice of Pendency* at 1-3; *Consent Form* at 1. The Plaintiffs also argue that the Court should order the Defendants to make available the names and last known addresses of all potential opt-in class members, and assert that they would safeguard such information. *Id.* at 6-7 (citing *In re Penthouse*, 2010 U.S. Dist. LEXIS 114743, at *18).

The Defendants have not addressed these issues, and the Court concludes they have waived any arguments against the Plaintiffs' request. However, under the guidance provided in *Hoffmann-LaRoche, Inc. v. Sperling*, 493 U.S. at 170-71, the Court reviewed the notice forms to ensure that they are "not an endorsement of any action and that the notice is fair and factual in all respects." *Pls.' Mot.* at 6; *see generally Sperling*, 493 U.S. at 174 ("In exercising the discretionary authority to oversee the notice-giving process, courts must be scrupulous to respect judicial neutrality. To that end, trial courts must take care to avoid even the appearance of judicial endorsement of the merits of the action"). The Court finds that the Plaintiffs' proposed notice and opt-in consent forms are appropriate,[7] and the Plaintiffs are authorized to distribute those forms to members of the proposed class.

---

[7] Paragraph 5 of the notice form states:

> 5. THE COURT EXPRESSES NO OPINION ON THE MERITS OF THIS LAWSUIT
>
> Although the court has approved the sending of this notice, is [sic] expresses no opinion on the merits of this lawsuit. The Court has not determined that The Getchell Agency, Inc., or Rena Getchell have failed to comply with the Fair Labor

The Court also directs the Defendants to identify by March 5, 2014, in a computer readable data file, information relating to all Getchell employees who worked for The Getchell Agency and were uniformly classified by Getchell as House Managers during the Fair Labor Standards Act statute of limitations period of three years. This information must include all potential opt-in plaintiffs' names, last known mailing addresses, and dates of employment.[8] Further, the Plaintiffs must properly safeguard the information provided by Defendants and the Court directs the parties to enter into a confidentiality agreement no later than February 26, 2014. *See In re Penthouse*, 2010 U.S. Dist. LEXIS 114743, at *20.

---

> Standards Act. There is no money currently available from this lawsuit to plaintiffs (or to persons receiving this notice) and there is no guarantee that the plaintiffs (or the person receiving this notice) will recover any money by joining this lawsuit.

*Notice of Pendency* at 3.

8 Whether the Plaintiffs are requesting more information than what the Court is authorizing is not clear. The header of the relevant section of the Plaintiffs' motion states "The Court Should . . . Order the Defendants to Make Available the Names and Last Known Addresses of All of the Putative Class Members." *Pls.' Mot.* at 6. In the text of the motion, the Plaintiffs do not specifically request particular categories of information but state "the general rule is that the court should require The Getchell Agency, Inc., to 'identify all potential opt-in plaintiffs in a computer readable data file, including their names, last known addresses, last known telephone numbers, social security numbers, and dates of employment.'" *Id.* at 6-7 (quoting *In re Penthouse*, 2010 U.S. Dist. LEXIS 114743, at *18). The quotation from *In re Penthouse* provides that court's summary of the plaintiff's requested relief, and does not support the proposition that all the listed types of information are provided as part of a general rule. *In re Penthouse*, 2010 U.S. Dist. LEXIS 114743, at *18-20. Instead, the *Penthouse* Court expressed concerns that disclosure of social security numbers raised privacy concerns and declined to order disclosure of that information but ordered disclosure of the balance of the information. *Id.* Since the Plaintiffs have not alerted the Court to a particular need for the information beyond notifying potential plaintiffs, the Court orders the Defendants to produce information limited to the Plaintiffs' purpose. If the Plaintiffs seek additional information, they should confer with defense counsel to seek mutual agreement before asking for further relief from the Court. In any case, the Court will not order the Defendants to turn over additional types of information (such as telephone numbers, email addresses, or social security numbers) in this Order.

## III. CONCLUSION

The Court GRANTS the Plaintiffs' Motion for Conditional Certification and Provision of Notice Under 29 U.S.C. §216(b) (ECF No. 34). The Court approves the notice and opt-in form submitted by the Plaintiffs as an appropriate means of contacting putative class members.

The Defendants are ORDERED to produce to the Plaintiffs by March 5, 2014, in a computer readable data file, all potential opt-in plaintiffs' names, last known mailing addresses, and dates of employment, as set forth above. The Plaintiffs must safeguard this information and should enter into a confidentiality agreement with the Defendants no later than February 26, 2014.

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
CHIEF UNITED STATES DISTRICT JUDGE

Dated this 12th day of February, 2014