## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | | |
|---|---|---|
| **KRISTOPHER T. SAUNDERS, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| v. | ) | **Case No. 1:13-cv-00244-JDL** |
| | ) | |
| **GETCHELL AGENCY, INC, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## ORDER ON THE RECOMMENDED DECISION
## OF THE MAGISTRATE JUDGE

Before the court are plaintiffs' Motion for Certification of Class Action Under Rule 23 (ECF No. 82) and defendants' Motion to Decertify Conditionally Certified Collective Action (ECF No. 81). On December 12, 2014, United States Magistrate Judge John Nivison issued a Report and Recommended Decision, recommending that plaintiffs' motion be granted and defendants' motion be denied. ECF No. 97. Defendants objected. ECF No. 100. I review the Magistrate Judge's recommendation *de novo*. *See* 28 U.S.C.A. § 636(b). After careful consideration, I reach the same conclusions as the Magistrate Judge on both motions. I adopt the Magistrate Judge's opinion as to defendants' motion to decertify in its entirety. However, I write separately on plaintiffs' motion for class certification in order to fully respond to defendants' objections and to ensure the "rigorous analysis" required as a prerequisite to class certification. *See Wal-Mart Stores, Inc. v. Dukes,* 131 S. Ct. 2541, 2551 (2011).

## I. FACTUAL AND PROCEDURAL BACKGROUND

This case arises under both Maine and federal labor law.  Plaintiffs, former employees of the Getchell Agency, Inc., allege that the Agency and its Chief Executive Officer Rena Getchell (collectively, "Getchell") violated the overtime provisions of the Fair Labor Standards Act ("FLSA"), 29 U.S.C.A. § 207, the overtime provisions of 26 M.R.S.A. § 664(3), and the minimum wage requirements of 26 M.R.S.A. § 664(1).  *See* ECF No. 32.

The Getchell Agency provides residential care services to disabled persons, whom the agency refers to as "consumers."  ECF No. 82-3 at 1.  To this end, Getchell manages roughly 44 single family homes, or "residences," in Bangor, Maine.  *Id.* Consumers live in these residences, and Getchell employs so-called "house managers" to work in the residences providing care.  *Id.*

House managers work an unorthodox weekly schedule, which is the subject of this litigation.  Typically, a house manager works a continuous, seven-day shift at a residence.  *Id.* At night, a house manager usually sleeps in the residence, unless certain circumstances exist and the house manager is allowed to go home.  *Id.* at 2. If consumers require care during the night, the house managers are expected to attend to them, unless there is a designated "awake overnight" staff member in the residence for that purpose.  *Id.* at 2-3.

The house managers are generally paid for the hours of 6:00 a.m. through 10:00 p.m., but are not typically paid for eight hours of "sleeping time at night."  *Id.* at 1. Getchell summarizes this policy as follows:

> [E]ach [named] plaintiff was told that the regular work schedule would
> be a seven-day shift, Wednesday noon to Wednesday noon, covering two
> pay weeks; that they would be paid overtime for hours over 40 hours
> each pay week; that they would be paid for the 16-hour work period from
> 6:00 a.m. to 10:00 p.m.; that there would be no deduction from pay for
> meal periods and times when the employee was not occupied with work
> duties during that period; that they would not be paid for the period
> from 10:00 p.m. to 6:00 a.m. when the consumers were ordinarily asleep;
> but that if they had to be up with the consumers in the night they would
> be paid for that time, and they should put that time on their time sheets.

ECF No. 82-2 at 5.

Plaintiffs, all former house managers, allege that they frequently had to care for consumers at night, *see* ECF No. 32 at 4-6, and that Getchell routinely failed to compensate them for these hours, *id.* at 7-8.   They filed suit in July, 2013, ECF No. 1, and now seek to certify a class action of "[a]ll persons who were, are, or will be employed by Defendant as House Managers in the State of Maine and who were paid on an hourly basis during the six years prior to the filing of the Complaint in this case, and who were required to be with the consumers for 24 hours per day," ECF No. 82 at 2.

## II. DISCUSSION

### A.   Class Action Certification

Because the collective action mechanisms of the Fair Labor Standards Act govern plaintiffs' federal claim, *see infra*, plaintiffs' motion for class certification relates only to their state law claim.  *See* ECF No. 32 at 13-14.  This claim alleges that Getchell failed to pay overtime for hours worked in excess of 40 hours a week, in violation of 26 M.R.S.A. § 664(3), and failed to pay the minimum wage for all hours worked, in violation of 26 M.R.S.A. § 664(1).  *Id.*

"To certify a 23(b)(3) class, the district court must undertake a 'rigorous analysis' to determine whether plaintiffs met the four threshold requirements of Rule 23(a) (numerosity, commonality, typicality, and adequacy of representation)[.]" *In re Nexium Antitrust Litig.*, 777 F.3d 9, 17-18 (1st Cir. 2015) (citing *Wal-Mart*, 131 S. Ct. at 2551). Moreover, certification is permitted only if

> the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

Fed. R. Civ. P. 23(b)(3). "Rule 23 does not set forth a mere pleading standard." *Wal-Mart*, 131 S. Ct. at 2551. Rather, a court should "probe behind the pleadings" to ensure that a plaintiff is "prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Id.* (emphasis in original).

The Recommended Decision found that plaintiffs had satisfied each requirement of Rule 23(a) and (b). ECF No. 97 at 17-19. Getchell's objection to the Recommended Decision does not address the Magistrate Judge's findings that the plaintiffs were numerous, typical of the proposed class, and adequate to protect the interests of the class. *See* ECF No. 100. Accordingly, I adopt the Recommended Decision on these issues.

Getchell objects, however, that the plaintiffs have not fulfilled the requirements of commonality, predominance, and superiority, and that the proposed class is not ascertainable. *Id.* at 13, 15, 17-18. I analyze plaintiffs' Rule 23 motion independently in order to more fully address these objections. Moreover, the Recommended Decision describes the commonality analysis required by Rule 23 as a

4

"low bar."  ECF No. 97 at 18 (citing *In re New Motor Vehicles Canadian Export Antitrust Litig.*, 522 F.3d 6, 19 (1st Cir. 2008)).  However, as defendants rightly note, more recent case law has reaffirmed that Rule 23(a) requires a "rigorous analysis" on this point.  *See Wal-Mart,* 131 S. Ct. at 2551.  I write to ensure the appropriate standard is applied.

### 1. Commonality

The commonality prong of Rule 23 requires plaintiffs to show that "there are questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  The dispositive inquiry is not just whether plaintiffs have raised common questions, but whether a class action is capable of producing common answers to these questions.  *See Wal-Mart*, 131 S. Ct. at 2551.  This means that commonality is satisfied only when "determination of [the question's] truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Id*.

Plaintiffs make two persuasive arguments for commonality.

### a. Common Question as to Whether Defendant had a Uniform Policy of Denying House Managers Payment for Overnight Hours

First, plaintiffs assert that "[w]hen the claims arise out of a companywide policy or practice, the commonality prerequisite is satisfied."  ECF No. 82 at 10-11. They suggest that, because the issue of whether Getchell had a uniform policy of denying payment for overnight hours is implicated, there is a question ripe for classwide resolution.  *See* ECF No. 101 at 12.

The Supreme Court has addressed at some length how plaintiffs may establish commonality when putative class members allege a general, unlawful corporate

policy.  *See Wal-Mart,* 131 S. Ct. at 2553; *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 159 n.15 (1982).  In this context, it is not enough that co-workers allege a common injury.  *Wal-Mart,* 131 S. Ct. at 2551.  Rather, to "bridge the gap" between an individual's claim that she was harmed by a general corporate policy and a supportable class claim that other employees suffered like injuries, a plaintiff must offer "[s]ignificant proof that an employer operated under a general policy" that was unlawful.  *Falcon,* 457 U.S. at 159 n.15; *see Wal-Mart*, 131 S. Ct. at 2553.  Accordingly, plaintiffs may proceed by showing evidence sufficient "to establish that [their] theory [of liability] can be proved on a classwide basis."  *Wal-Mart*, 131 S. Ct. at 2555.

Plaintiffs have proffered sufficient – in fact, "significant" – proof to support their allegations that Getchell had a general policy of withholding overnight pay. Specifically, plaintiffs have submitted more than two hundred timecards, purporting to represent complete sets of Getchell Agency timecards from four different weeks, which appear to show that, at most, only three house managers were compensated for any overnight hours.  *See* ECF Nos. 88-1 – 88-4.  Moreover, the timecards show no instance of an employee being compensated for a brief period during overnight hours – contradicting Getchell's assertions that employees were encouraged to put hours on their timecards if they had to tend to the consumers overnight.  *Id.*  This showing of proof is sufficient to establish that plaintiffs' theory of liability can be proved on a classwide basis.

**b.**  **Common Question of Law as to Whether the Putative Class Members' Overnight Hours were Compensable**

Next, plaintiffs contend that a common question of law exists in the necessity of determining whether plaintiffs' overnight hours were hours "actually worked" as that term is employed in 26 M.R.S.A. § 664.  *See* ECF No. 82 at 11.

The Maine statutes at issue do not define "work" or "actually worked."  *See* 26 M.R.S.A. §§ 663-64.  Instead, courts determine what constitutes "work" through a "uniquely factual determination" that examines the totality of the circumstances in a given case.  *Cooper v. Springfield Terminal Ry. Co.*, 635 A.2d 952, 955 (Me. 1993); *see also, Crook v. Russell*, 532 A.2d 1351, 1354 n.5 (Me. 1987).  The parties agree that whether the overnight hours of house managers were hours "actually worked" is at issue, and seem to agree on the relevant legal framework.  *See* ECF No. 82 at 18-19; ECF No. 89 at 4-5, 16-19.  They differ, though, on the propriety of resolving this issue on a classwide basis.  While plaintiffs assert that this issue is capable of classwide resolution, ECF No. 82 at 18, Getchell argues that considering whether an employee "worked" during overnight hours involves numerous individual inquiries, so that there is no single answer that could resolve the issue for all plaintiffs, ECF No. 89 at 16-19.  The precise question presented, then, is whether plaintiffs may use common evidence to establish that the overnight hours of *all* house managers were hours "actually worked."  *See Lyons v. Citizens Fin. Group, Inc.*, 2012 WL 5499878, *1 (D. Mass. Nov. 9, 2012) ("[t]he question presented by the class certification motion is whether the merits question can properly be answered on a class basis under Rule 23 or rather must be answered on an individual, employee-by-employee basis").

7

The Law Court has not had occasion to consider this specific question. The decision most closely on point is *Cooper*, where the Law Court examined whether certain hours constituted "work" in a multiple-plaintiff context. *See Cooper*, 635 A.2d at 955. Analyzing circumstances common to all plaintiffs, the Law Court held that the trial judge did not err in concluding that railroad employees performed "work" when they were required to attend a ten-day training program that included activities which benefited their employer. *Id*. The precise number of plaintiffs in *Cooper* is unclear from the Court's opinion, and the case was not a class action. However, *Cooper* supports the proposition that whether an employee's hours were hours "actually worked" does not have to be resolved on an individual basis. In the absence of any authority to the contrary, I conclude that whether the house managers' overnight hours constituted "work" may be properly decided with respect to all plaintiffs.

The question remains whether plaintiffs are prepared to show that, in fact, the putative class of house managers was actually working during their overnight hours. *See Wal-Mart*, 131 S. Ct. at 2551. On this point, plaintiffs' evidence is as follows: house managers are scheduled to be on duty for a continuous seven-day shift. ECF No. 82-3 at 1. A house manager may be able to return to their own home overnight if another staff member is available to stay in the residence with the consumer. *Id*. at 2; ECF No. 82-1 at 11. If a house manager remains in the residence, however, there can be times overnight when a consumer needs a house manager's attention. ECF No. 82-3 at 2. Getchell's staffing coordinator testified that the job of a house

manager involves being available to the consumers 24 hours a day, ECF No. 82-1 at 5, and the employee handbook submitted by plaintiffs asks that house managers "[b]e able to hear consumers needing assistance . . . throughout the night," ECF No. 82-4 at 4.[1]

This evidence tends to show that, at least during those shifts where they remained in a residence overnight, house managers were expected to be on call to attend to consumers' needs. Such evidence could establish that house managers' overnight hours were hours "actually worked." The status of overnight hours under Maine law is therefore a common question of law capable of classwide resolution, which plaintiffs have shown they are prepared to prove with common evidence.

Whether Getchell had a uniform, unlawful policy of withholding pay for overnight hours and whether those overnight hours were compensable under Maine law are both common questions capable of classwide resolution. I therefore conclude that plaintiffs have satisfied the commonality requirement of Rule 23(a).

## 2. Predominance

Turning to the requirements of Rule 23(b), plaintiffs must show that "the questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). "[T]he need for some individualized determinations at the liability and damages stage does not defeat class certification." *Nexium*, 777 F.3d at 21. Rather, the appropriate inquiry is "whether there is 'reason to think that individualized questions will overwhelm common ones.'"

---

[1] While Getchell objects that this handbook has not been authenticated, it does not deny its authenticity or offer evidence calling its authenticity into doubt. ECF No. 100 at 6-7.

*Id.* (citing *Halliburton Co. v. Erica P. John Fund, Inc.*, 134 S. Ct. 2398, 2412 (2014)) (internal punctuation omitted).  In conducting this analysis, a court may properly consider whether "case management tools," such as affidavits ordered from all putative class members, could be used to settle particular individual questions. *Nexium*, 777 F.3d at 21.

> a.    **The Individual Issues**

Getchell identifies several issues which it claims can only be resolved on an employee-to-employee basis.  In order to properly examine whether these individual issues will truly "overwhelm" common ones in this case, I first address the nature of each issue.

First, Getchell asserts that the threshold issue of whether plaintiffs' overnight hours were compensable under Maine law must be resolved for each employee, individually.  ECF No. 89 at 24.  As discussed above, however, plaintiffs may use generalized proof to establish that house managers' overnight hours were hours "actually worked."  *See Cooper*, 635 A.2d at 955.  Individual circumstances may play into this inquiry.  For example, evidence that certain employees never had to tend to a consumer overnight would weigh in favor of ultimately concluding that house managers' overnight hours were not hours "actually worked."  Yet this issue remains capable of classwide resolution.  There are no individual issues to resolve on this point, then – only individual facts that relate to the determination of a single, common issue.

Next, Getchell places great emphasis on the fact that some house managers, on occasion, returned to their own private homes during overnight hours.  ECF No. 100 at 15-17.  Getchell suggests that whether a house manager returned home in lieu of sleeping on the premises is an individual inquiry that implicates both the liability and damages stages of this litigation.  *Id.* at 15.

Resolving this issue will not necessitate the resolution of individual issues on the scale that Getchell suggests.  If plaintiffs establish that hours spent on-call in a residence are hours "actually worked," then hours spent off-site at a house manager's private home are not compensable, and thus not implicated in liability.  The question of damages may require more involved inquiries into whether a particular employee remained at a residence during the overnight hours of her shift.  However, case management tools may be used to temper the impact of a discrete question such as this.  *See Nexium*, 777 F.3d at 20-21 (finding that common questions of law and fact predominated in part because presumptions and affidavits could be used to determine if plaintiffs were actually injured).  It should also be noted that the problem of determining whether house managers remained at the residences overnight does not seem to be universal – Getchell identifies only one place in the record where an employee admits returning home at night during her house manager overnight hours. *See* ECF No. 100 at 7-8.[2]

---

[2]  Getchell claims that both Taylor Perkins and Katelin Varney admitted to returning home during the 10:00 p.m. to 6:00 a.m. window of their house manager shifts.  ECF No. 100 at 7-8.  However, the record citation offered for this point with respect to Varney indicates that she went home to sleep when she was working a schedule *different* than the typical seven-day, 6:00 a.m. to 10:00 p.m. arrangement. *See* ECF No. 81-11 at 6-7.

Getchell further argues that the possible application of an overtime exemption for domestic service employees will raise individual issues. *See* ECF No. 89 at 6. Specifically, Getchell suggests that whether the exemption applies will involve "review [of] the employment circumstances of all putative class members." *Id.* at 7.

The statute in question, repealed in 2008, exempted certain domestic service employees from Maine overtime laws. *See* 26 M.R.S.A. § 663(3)(B) (2008) (repealed 2008) (exempting "[a]n individual employed in domestic service in or about a private home and engaged directly by the resident or owner of that private home or the family of the resident or homeowner"); 26 M.R.S.A. § 663(3)(B) (2007) (amended 2007) (exempting "[a]ny individual employed in domestic service in or about a private home"). Getchell does not explain exactly why any individual inquiry is necessary to determine whether this exemption applies, *see* ECF No. 89 at 6-7, and I fail to see how the exemption's applicability – which hinges on an employee's job duties and the nature of the residence in which they work – could not be decided on common proof. *See Madison v. Res. for Human Dev., Inc.*, 233 F.3d 175, 184 (3rd Cir. 2000) (determining on a classwide basis that federal domestic services exemption did not apply to class of aides for mentally disabled adults); *Johnston v. Volunteers of America, Inc.*, 213 F.3d 559, 565 (10th Cir. 2000) (finding based on common evidence that the federal domestic services exemption did not apply to aides for disabled clients when client residences were not "private homes").

Finally, Getchell argues that its ultimate liability in this case could hinge on the applicability of several FLSA overtime exemptions, each of which involves the

circumstances of individual plaintiffs. ECF No. 89 at 27. Specifically, Getchell suggests that either 29 C.F.R. § 785.22 or § 29 C.F.R. 785.23 may apply. *Id.* Section 785.22 provides that sleeping periods constitute hours worked unless an employee and employer have an agreement to the contrary, while § 785.23 provides that a "reasonable agreement of the parties" governs which hours are compensable when an employee is required to live at an employer's premises. *See* 29 C.F.R. §§ 785.22, 785.23. According to Getchell, determining if there is an agreement between the parties that controls either of these exemptions will require looking at the circumstances of each individual employee. ECF No. 89 at 27.

As an initial matter, it is unclear whether any FLSA exemption is actually implicated in the class action portion of this case. To state the obvious, plaintiffs' claims under 26 M.R.S.A. § 664 are state law claims. While it is true that the Law Court has turned to federal wage and hour law for guidance in these areas, *see Gordon v. Maine Cent. R.R.*, 657 A.2d 785, 786 (Me. 1995), it has not yet addressed the relationship, if any, between 26 M.R.S.A. § 664 and 29 C.F.R. §§ 785.22 and 785.23. I decline to resolve that issue today.

Even if § 785.22 or § 785.23 did apply, the scale of any individual issues the exemptions could generate is unclear. Evidence in the record suggests that the existence of any agreement between Getchell and its employees is susceptible to common proof. For example, both the Getchell Agency's interrogatory responses and Rena Getchell's affidavit describe a common policy for payment of the house managers who worked 6:00 a.m. to 10:00 p.m. shifts. *See* ECF No. 82-2 at 5-6; ECF

No. 82-3 at 1.  Neither description of payment policies and practices suggests that the company had different agreements with different house managers.  *Id*.  Indeed, Getchell argues that an individual inquiry is necessary into agreements that each employee had with the company without identifying a single meaningful difference between any of these agreements.  ECF No. 89 at 28.  If each employee had the same agreement, no individual inquiries are necessary.   If Getchell had different understandings with different employees, it should show so affirmatively – something it has failed to do thus far.  *See Smilow v. Sw. Bell Mobile Sys., Inc.*, 323 F.3d 32, 40 (1st Cir. 2003) ("[t]here is even less reason to decertify a class where the possible existence of individual . . . issues is a matter of conjecture.")

### b.    Whether Individual Issues Overwhelm Common Ones

In sum, based on the existing record, the adjudication of plaintiffs' state law claim will not require significant consideration of individual issues at the liability stage.  The threshold question of whether house managers' overnight hours were compensable can be accomplished on a classwide basis, using common proof.  *See supra*.  The various exemptions that Getchell may raise to defeat liability also do not tip the scales in favor of individual issues.   Maine's domestic service exemption relates to a small portion of the claim period, and is capable of resolution on common proof.  The FLSA exemptions raised by Getchell may not even apply, and if they do, it has not been shown that any agreement between Getchell and its employees varied materially from employee to employee.  Determining liability in this case, therefore, will largely be a common question.  *See Scovil v. FedEx Ground Package Sys., Inc.*,

886 F. Supp. 2d 45, 55 (D. Me. 2012) (certifying class even though the application of an independent contractor exemption to Maine wage law was implicated); *Lyons*, 2012 WL 5499878 at \*4 (certifying class despite the application of a Massachusetts wage law exemption for administrative personnel).

At the damages stage, individual issues are implicated. But "[w]here, as here, common questions predominate regarding liability, then courts generally find the predominance requirement to be satisfied even if individual damages issues remain." *Smilow*, 323 F.3d at 40. *See also*, *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1437 (2013) (Ginsburg, J. & Breyer, J., dissenting) ("[r]ecognition that individual damages calculations do not preclude class certification under Rule 23(b)(3) is well nigh universal.")  In light of these considerations, individual issues do not overwhelm common ones in this litigation.  I therefore conclude that common questions of law and fact predominate.

### 3. Superiority

Getchell also objects to the Magistrate Judge's finding that a class action in this case would be superior to individual litigation.  ECF No. 100 at 17.  Here, plaintiffs must establish that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).  This inquiry weighs numerous factors, including the difficulties of managing a class action and the possibility of a class action to "vindicat[e] . . . the rights of groups of people who individually would be without effective strength to bring their opponents into court at all."  *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 616-17 (1997).

Plaintiffs argue that a class action is superior because the individual employees of the Getchell Agency may have financial difficulty in prosecuting individual lawsuits, and because potential plaintiffs still employed by Getchell may fear retaliation if they brought a lawsuit without the cover of a class action. ECF No. 82 at 22. In response, Getchell reasserts its predominance argument, suggesting that individual issues will complicate a class litigation. ECF No. 89 at 31.

Plaintiffs have the better argument. Beyond the fact that the presence of the individual issues may present some case management hurdles, no party suggests particular problems posed by proceeding on a class basis. Without a more compelling showing that a class action will pose discrete difficulties, there is no sound basis to conclude that a multitude of individual lawsuits against Getchell would be a superior process to a single class action of relatively modest size. Accordingly, I conclude that a class action is superior to individual lawsuits in this case. I reach this conclusion mindful that that if further challenges arise as this litigation progresses, reconsideration of this issue may be warranted. *See Tardiff v. Knox Cnty.*, 365 F.3d 1, 6 (1st Cir. 2004); *Campbell v. First American Title Ins. Co.*, 269 F.R.D. 68, 79 (D. Me. 2010).

### 4. Whether the Proposed Class is Ascertainable

As a final objection to the class action portion of the Recommended Decision, Getchell protests that the class proposed by plaintiffs cannot be ascertained. ECF No. 100 at 18. Because the record indicates that certain house managers went home at various times during their shifts, Getchell argues that individual litigation is

required to determine whether each house manager was in fact "required to be with the consumers for 24 hours per day." *Id.*

The "description of [a] class must be sufficiently definite so that it is administratively feasible to determine whether a particular individual is a member[.]" *Crosby v. Social Sec. Admin.*, 796 F.2d 576, 580 (1st Cir. 1986) (citing 7 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1760 (2nd ed. 1992)). Class definitions must therefore be based on objective criteria, in order to avoid individualized fact-finding and litigation before class members can be identified. *Id.*

The record indicates that some house managers were allowed to leave the residences and the company of the consumers on certain occasions, and did in fact do so. *See, e.g.,* ECF No. 82-10 at 5. Getchell is correct, then, that not all house managers were required to be with consumers for 24 hour periods under all circumstances. However, the record is also clear that a *generalized* requirement to remain at the residences with the consumers for 24 hour periods was part of the house manager job description. *See* ECF No. 82-3 at 1 ("[m]ost House Managers are scheduled to be *on duty* for a continuous seven-day shift") (emphasis added); ECF No. 82-1 at 5 (noting that the duties of house managers involved being "more or less available to the consumers 24 hours a day"). Determining class membership, then, will therefore require viewing a putative class member's time cards in order to certify that they worked the seven-day, 24-hour shifts in question. This is both objective and administratively feasible. Moreover, the fact that employees occasionally departed

from a general job requirement does not make the proposed class unascertainable based on that requirement. *See Matamoros v. Starbucks Corp.*, 699 F.3d 129, 139 (1st Cir. 2012) (the fact that baristas occasionally worked as shift supervisors did not make a class based on the "barista" job title unascertainable). I therefore conclude that the class as proposed by plaintiffs is ascertainable.

**B.     FLSA Collective Action**

The Magistrate Judge found that, because plaintiffs are similarly situated, their FLSA collective action claim should proceed. ECF No. 97 at 14. I agree with the Magistrate Judge, and adopt his reasoning.

### III. CONCLUSION

It is therefore **ORDERED** that plaintiffs' motion for class certification (ECF No. 82) is **GRANTED**; defendants' motion to decertify plaintiff's FLSA collective action (ECF No. 81) is **DENIED**.

**SO ORDERED.**

Dated: March 23, 2015                    /s/ Jon D. Levy
                                         U.S. District Judge